IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., as | § | |
| Broadcast Licensee of the | § | |
| September 19, 2009 UFC 103: | § | |
| Franklin/Belfort Event, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-11-3406 |
| | § | |
| 152 BRONX, L.P., Individually | § | |
| and doing business as BRONX | § | |
| GRILL; 152 BRONX GP, L.L.C., | § | |
| Individually and d/b/a BRONX | § | |
| GRILL; SHAHAB HASHEMI, Individu- | § | |
| ally and d/b/a BRONX GRILL, | § | |
| EDDIE OWIDI, Individually and | § | |
| d/b/a BRONX GRILL; JAMES LLOYD | § | |
| DOBSON, Individually and d/b/a | § | |
| BRONX GRILL; and MICHAEL TAUBIN, | § | |
| Individually and d/b/a BRONX | § | |
| GRILL, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER OF PARTIAL SUMMARY JUDGMENT**

The above referenced "anti-piracy" action under the Federal Communications Act of 1934 ("Communications Act"), as amended, 47 U.S.C. §§ 553 and 605,[1] alleges that Defendants 152 Bronx, L.P.,

---

[1] Section 553(a)(1) provides in relevant part, "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

Section 605(a) states in relevant part, "[N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . to any

-1-

Individually and d/b/a Bronx Grill, 152 Bronx GP, L.L.C., Individually and d/b/a Bronx Grill, Shahab Hashemi, Individually and d/b/a Bronx Grill, Eddie Owidi, Individually and d/b/a Bronx Grill, James Lloyd Dobson, Individually and d/b/a Bronx Grill, and Michael Taubin, Individually and d/b/a Bronx Grill,[2] illegally and without authorization intercepted the closed-circuit telecast of the September 19, 2009 Ultimate Fighting Championship 103:  Rich Franklin v. Vitor Belford Fight Program (the "Event"), including undercard or preliminary bouts, and exhibited the Event at their establishment, Bronx Grill (the "Establishment"), without paying the licensing fee.  Pending before the Court is Plaintiff Joe Hand Promotions, Inc.'s amended motion for summary judgment (instrument

---

person other than the addressee, his agent, or attorney . . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."

[2] Plaintiff claims that Defendant 152 Bronx LP held the TABC license/permit for the Establishment, operated the Establishment, had the right and ability to supervise the activities of the Establishment, and had a financial interest in its activities. Defs.' Original Answer (#4 at ¶ 2 A-D; Ex. D at Response #28. Defendants 152 Bronx GP, LLC, Hashemi, and Taubin had the right and ability to supervise the activities of the Establishment and a financial interest in its activities.  #4, ¶ 3, 4, and 7; Ex. H at Response No. 30; Ex. I at Response No. 30.  Defendants Owidi and Dobson had a financial interest in the activities of the Establishment.  #4 at ¶¶ 5 and 6; Ex. F at Response No. 30; Ex. G at Response No. 30.

#23).

## Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which movant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the

nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986).  "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252.  The

Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id.*, *quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.[3]

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

**Federal Rules of Civil Procedure 26(a) and (e) and 37(c)(1)**

Federal Rule of Civil Procedure 26(a) sets out specific information that must be disclosed initially at, or within fourteen days after, the parties' Rule 26(f) conference to the opposing party unless it is exempted under Rule 26(a)(1)(B). Under Rule 26(e), a party who has made a disclosure under Rule 26(a) or

---

[3] The court has no obligation to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Rather the nonmovant must identify evidence in the record and demonstrate how it supports his claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

responded to an interrogatory, request for production or request for admissions, must supplement that disclosure or response in a timely manner if the party learns the response is incomplete or incorrect and if not otherwise made known to the other party during the discovery process, or as ordered by the court.   Under Rule 26(e)(2).

> For an expert witness whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition.  Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Federal Rule of Civil Procedure 37(c)(1) provides, "If a party fails to provide information or identify a witness required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

**Plaintiff's Amended Motion for Summary Judgment (#23)**

Appended to Plaintiff's motion is the following documentary evidence: (1) Exhibit A is comprised of the affidavit of Thomas P. Riley, Plaintiff's representative and custodian of records, to which are attached (a) a copy of the Distributorship Agreement between Plaintiff and the promoter of the Event giving Plaintiff the exclusive right to license the exhibition of the Event to commercial establishments such as Defendants', (b) a copy of the

affidavit of Hugo Flores, Plaintiff's "auditor" or eye witness, who observed the Event being exhibited to patrons at Defendants' Establishment and who took video footage of the Event being exhibited there, and (c) the Rate Card for the Event; (2) Exhibit B, affidavit and resume of David M. Diaz regarding award of attorneys' fees; (3) Exhibit C, a copy of the video[4] taken by Plaintiff's investigator, Yolanda E. Cuellar, showing the Event being broadcast in Defendants's establishment; (4) Exhibit D, Defendant 152 Bronx L.P.'s admissions--Defendant's Responses to Plaintiff's First Request for Admission to Defendant 152 Bronx; (5) Exhibit E, Defendant 152 Bronx G.P., LLC's admissions--Defendant's Responses to Plaintiff's First Request for Admission to Defendant 152 Bronx G.P., LLC; (6) Exhibit F, Defendant Eddie Owidi's admissions--Defendant's Responses to Plaintiff's First Request for Admission to Defendant Eddie Owidi; (7) Exhibit G, Defendant Lloyd Dobson's admissions--Defendant's Responses to Plaintiff's First Request for Admission to Defendant Lloyd Dobson; (8) Exhibit H, Defendant Michael Taubin's admissions--Defendant's Responses to Plaintiff's First Request for Admission to Defendant Michael Taubin; (9) Exhibit I, Defendant Shahab Hashemi's admissions-- Defendant's Responses to Plaintiff's First Request for Admission to Defendant Shahab Hashemi; (10) Exhibit J, Defendant's Responses to

---

[4]    Available    at    http://www.youtube.com/watch?v-41UXOjkDiN4&featrue-youtu.be.

Plaintiff's First Set of Interrogatories to Defendant 152 Bronx, L.P.; and (11) Exhibit K, Defendant's Responses to Plaintiff's First Set of Interrogatories to Defendant 152 Bronx GP, LLC.

Plaintiff states that Defendants do not dispute that the Event was broadcast at their Establishment, but argue that they believed they had the right to show it because they purchased the Event from its television provider.  Defendants' Answer, #4, ¶ 16 and 18. Such an argument is not a valid defense under the Communications Act.  *See, e.g., National Satellite Sports, Inc. v. Eliads, Inc. b/b/a Melody Lane Lounge*, 253 F.3d 900, 916–17 (6th Cir. 2001)("Even assuming, as the defendants contend, that there was no 'interception' here because [the bar] was 'authorized' by [the residential distributor] to receive the Event on a pay-per-view basis, defendants still have violated the Act because they clearly were not authorized to then broadcast the Event to the patrons of a commercial establishment such as [the bar] . . . . The first and third sentences of [§ 605] do not require an 'interception' of a cable transmission and clearly proscribe the unauthorized divulgence or use of communications which have been 'received' legally for certain purposes."); *Garden City Boxing Club, Inc. v. Vinson*, No. 3:03-CV-0700-BD(P), 2003 WL 22077958, at *2 (N.D. Tex. Sept. 3, 2003)("The fact that the defendant may have purchased and lawfully received the Lewis-Tyson fight from DirectTV does not immunize her from liability for then broadcasting the event to

-8-

patrons at her bar without obtaining authorization from the plaintiff, the exclusive licensee."); *Joe Hand Promotions, Inc. v. Lee*, Civ. A. No. H-11-2904, 2012 WL 1909348, at *3 (S.D. Tex. May 24, 2012); *J&J Sports Productions, Inc. v. Orellana*, Civ. A. No. H-11-0574, 2012 WL 3155728, at *4 (S.D. Tex. Aug. 2, 2012)("Any unauthorized showing of the Event is a violation of the Communications Act.").

To violate the Communications Act, which is a strict liability statute, a plaintiff ("aggrieved party") need only prove that (1) the Event was shown in the Defendants' Establishment and (2) Plaintiff did not authorize the exhibition of the Event there. 47 U.S.C. § 605; *J&J Sports Productions, Inc. v. Casita Guanajuato, Inc.*, 2014 WL 1092177, at *1 (W.D. Tex. Mar. 19, 2014), *citing Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999), and *Joe Hand Promotions, Inc. v. Macias*, No. H-11-1773, 2012 WL 950157, at *2 (S.D. Tex. Mar. 19, 2012).

The Court observes that Sections 553 and 605 of the Communications Act "expressly prohibit assisting third parties in intercepting or receiving unauthorized communications, and have been interpreted to allow [an aggrieved person] to hold [a person] individually [vicariously] liable if he had (1) the right and ability to supervise the unauthorized activities of the establishment in those activities and (2) an obvious and direct financial interest in those activities." *Joe Hand Promotions, Inc.*

*v. Ambiente Bar LLC*, Civ. A. No. 7:13-CV-132, 2014 WL 580767, at *2 (S.D. Tex. Feb. 13, 2014), *citing Joe Hand Promotions, Inc. v. Chapa*, Civ. A. No. H-08-422, 2009 WL 2215124, at *3 n.2 (S.D. Tex. July 22, 1009); *Joe Hand Promotions, Inc. v. Adame*, No. EP-12-CV-141-KC, 2012 WL 3561367, at *4 (W.D. Tex. Aug. 16, 2012); *J&J Sports Productions, Inc. v. Q Café, Inc.*, Ci. A. No. 3:10-CV-2006-L, 2012 WL 2152 WL 215282. *4 (N.D. Tex. Jan 23, 2012). *See also J&J Sports Productions, Inc. v. Restaurant & Taqueria Cristina*, No. 3:11-cv-3104-N (BF), 2013 WL 3878589. at *5 (N.D. Tex. July 29, 2013), *citing J&J Sports Productions, Inc. v. Mandell Family Ventures*, Civ. A. No. 3:10-CV-2489-BF,  2013 WL 4757694, at *5 (N.D. Tex. Oct. 5, 2012).

In Defendants' Answer (#4), Defendant 152 Bronx LP has judicially admitted that it held the TABC liquor permit for the Establishment on the night of the Event, a fact that makes it responsible for the illegal exhibition of the Event there.  #4, ¶ 2 A-D; Ex. D at Response 28; *J&J Sports Productions, Inc. v. Garcia,* Civ. A. No. H-08-1675, 2009 WL 2567891, at *3 (S.D. Tex. Aug. 14, 2009)("Defendant is responsible for broadcast at the Event at her establishment because she holds the liquor license."), *citing Joe Hand Promotions, Inc. v. Roberson Management*, No. H-05-3793, 2006 WL 2346308, at *1 (S.D. Tex. Aug. 11, 2006)(Under Tex. Alcohol Bev. Code Ann. § 109.53, the person who holds the liquor license must maintain "exclusive occupancy and control" and cannot

surrender control of the "employees, premises or business of the permitee so he was responsible for all portions of the bar, including the televisions), and *Garden City Boxing Club*, *Inc. v. Soule Corp.*, No. W-03-CA-401 (W.D. Tex. Oct. 22, 2004)(Holding that the person that holds the liquor license for the establishment must "maintain exclusive occupancy and control of the [establishment] under Texas law."). *See also J&J Sports Productions, Inc. v. Q Café, Inc.*, Civ. A. No. 3:10-CV-02006-L, 2012 WL 215282, at *4 (N.D. Tex. Jan 25, 2012). It also admitted that "it operated the Establishment," "that it had a right and ability to supervise the activities of the Establishment," and that "it had a financial interest in the activities of the Establishment." #4 at p. 2.

Defendant 152 Bronx GP, LLC judicially admitted that it "had a right and ability to supervise the activities of the Establishment" and "had a financial interest in the activities of the Establishment." *Id*. Shahab Hashemi has judicially admitted that he was "a manager of the Establishment," "a limited partner of 152 Bronx L.P.," "a member of 152 Bronx GP, LLC," "had a right and ability to supervise the activities of the Establishment," and "had a financial interest in the activities of the Establishment." *Id*. at p.3. Defendant Eddie Owidi denies he was "an owner or manger of the Establishment" or that he had "a right and ability to supervise the activities of the Establishment. *Id*. Owidi does admit that he was a "limited partner of 152 Bronx L.P., and a member of 152 Bronx

GP, LLC," and that he "had a right and ability to supervise the activities of the Establishment and "a financial interest in the activities of the Establishment." *Id.* Defendant James Lloyd Dobson also denies that he "was an owner or manager of the Establishment" or had "a right and ability to supervise" its activities, but judicially admits that he was "a limited partner of 152 Bronx L.P. and had "a financial interest in the activities of the Establishment." *Id.* at pp. 3-4. Finally Defendant Michael Taubin admits that he was a manager, a limited partner of 153 Bronx L.P., a member of 152 Bronx GP, LLC, had "a right and ability to supervise the activities of the Establishment," and had "a financial interest" in the activities of the Establishment. *Id.* a t p.4.

Because the actual amount of damages is difficult to prove, Plaintiff seeks statutory damages in the amount of $10,000.00, pursuant to the Communications Act, 47 U.S.C. § 605(e)(3)(C)(i)(I) and (II)(A plaintiff who establishes liability for violation of the Communications Act is entitled to recover actual damages or statutory damages in the amount of "not less than $1000 or more than $10,000, as the court considers just.").

The evidence attached to Plaintiff's motion demonstrates that on the date of the Event, Defendants intercepted and received, or assisted in the interception and receipt of, the live telecast of the Event and then broadcast or assisted in the broadcast of the

Event to patrons at their Establishment for viewing there.  It further proves that the patrons there purchased meals and/or drinks while watching the Event.

Plaintiff seeks statutory damages not only for the substantial amount that it paid for the right to sublicense the broadcast to commercial establishments, but additional compensation because it has been deprived of the "value, benefits and profits" derived from the unauthorized broadcast of the Event to Defendants' Establishment and their patrons, as well as injury to the value of its "business investment, business opportunities and good will." *See American Television and Communications Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D. Fla. 1986); *Kingvision Pay-Per-View. Ltd. v. Guerrero*, Civ. A. No. 3:08-CV-1970-G (BF), 2009 WL 1973285, at *4 (N.D. Tex. July 7, 2009).  *See also* Ex. A, Affidavit of Thomas P. Riley detailing types of damages suffered, including loss of customers and loss of revenues from people who would have become patrons had Defendants not illegally broadcast the Event. Plaintiff claims it suffered loss of goodwill and reputation, and loss of its right to control and receive fees from the transmission of the Event.  *Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1161 (D. Mass. 1986).

Furthermore, in addition to statutory damages in the amount of $10,000.00, Plaintiff seeks damages for a "willful" violation for the purpose of "direct or indirect commercial advantage or private

-13-

financial gain" under 47 U.S.C. § 605(e)(3)(C)(ii)[5] and §
553(c)(3)(B). *See, e.g., ON/TV of Chicago v. Julien*, 763 F.2d 839,
844 (7th Cir. 1985)("willful" under the statute means "disregard
for the governing statute and an indifference to its requirements),
*quoting TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127
(1985). Given that the transmission was electronically coded or
scrambled to safeguard it against unauthorized interception or
receipt and therefore required using an unauthorized cable or
satellite service and illegally altering the cable or satellite
service or moving an unauthorized decoder or satellite card from
its authorized location to the Establishment, there was no way the
Defendants could have innocently accessed the broadcast of the
Event; they had to act specifically and willfully to illegally
intercept the transmissions.[6]   Defendants knew it was wrong to

---

[5] Section 605(e)(3)(C)(ii) provides,

In any case in which the court finds that the violation
was committed willfully and for purposes of direct or
indirect commercial advantage or private financial gain,
the court in its discretion may increase the award of
damages, whether actual or statutory, by an amount of not
more than $100,000 for each violation of subsection (a)
of this section.

[6] The Court observes that "'To deter pirating of cable and
satellite broadcasts, courts have applied multipliers of three to
eight times the statutory damages as additional damages.'" *Joe
Hand Promotions, Inc. v. Leija*, No. 3:13-CV-1462-L, 2014 WL
1095034, at *2 (N.D. Tex. Mar. 20, 2014), *citing Kingvision Pay-
Per-View, Ltd. v. Scott E's Pub., Inc.*, 146 F. Supp. 2d 955, 960
(E.D. Wis. 2001)(discussing cases applying multipliers of three to
eight times the statutory damages as additional damages to deter
future violations).

receive, intercept and divert the signal of the Event and to broadcast it in Defendants's Establishment. *King Vision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001); *Time Warner Cable v. Googies Lunchonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 19999)("[T]here can be no doubt that the violations were willful and committed for the purposes of commercial advantage and private gain. Signals do not descramble spontaneously nor do televison sets connect themselves to cable distribution systems.").

The Court has discretion in determining the amount of "willful" damages, but that sum cannot be more than $100,000 for any single violation. *Casita Guanajuato*, 2014 WL 1092177, at *3. In determining the amount of an award for willfulness damages where Defendants intended to exhibit the Event to secure a private financial gain and direct commercial advantage by misappropriating Plaintiff's licensed exhibitions and infringing on its rights, courts have considered such factors as the number of televisions on which defendants broadcast the Event,[7] the food and beverages it

---

[7] *See, e.g., Time Warner Cable of New York City and Taco Rapido Restaurant*, 988 F. Supp. 107, 111-12 (E.D.N.Y. 1997)(showing Event on multiple televisions is evidence of commercial advantage); *J&J Sports Productions, Inc. v. Perales*, Civ. A. No. SA-08-CA-373-FB, (W.D. Tex. 21, 2009)(event telecast to the patrons of the defendant's establishment on three televisions warranted imposition of additional damages under § 605(e)(3)(C)(ii)). See also Exhibits A-2, J at Response No.3, and K at Response no. 3. In his affidavit Hugo Flores states that there were five televisions in the Bronx Grill showing the broadcast. Ex. A-2.

sold to customers, as well as the cover charge,[8] and whether it was
broadcast in a relatively urban city where the broadcast would have
more than a minimal impact.[9]

Finally Plaintiff requests an award of attorney's fees under
47 U.S.C. § 553(c)(2)(C) and § 605(e)(3)(B)(iii)("The Court shall
direct the recovery of full costs, including awarding reasonable
attorneys' fees . . . ."). Ex. B, Affid. of David M. Diaz.
Counsel also requests a contingent award of fees in the event of
post-trial, pre-appeal, and appellate services if such services are
provided and do not lead to a reversal of the judgment.

In sum, Plaintiff seeks the following: (1) statutory damages
under 47 U.S.C. § 605(3)(3)(C)(i)(II) in the amount of $10,000.00;
(2) additional damages for a willful violation under 47 U.S.C. §
605(e)(3)(C)(ii) in the amount of $50,000.00; (3) attorneys' fees
under 47 U.S.C. § 605(e)(3)(B)(iii)(court shall "direct the
recovery of full costs, including awarding reasonable attorney's

---

[8] *Joe Hand Promotions,, Inc, v. Chios, Inc.*, No. 4:11-CV-2411,
2012 WL 3069935, at *6 (S.D. Tex. July 27, 2012), *aff'd*, 544 Fed.
Appx. 444(5th Cir. May 23, 2013), *citing KingVision Pay-Per-View
Ltd.*, No. H-02-1311 (S.D. Tex. Mar. 10, 2003)("It is the Court's
view that the defendant profited even if it did not charge a cover
by selling food and beverages to the patrons who expected and did
view the broadcast.") and *Time Warner Cable of New York City v.
Taco Rapido Restaurant*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997)
("[D]efendant's display of the Event most likely led to an
increased number of patrons, and thus to an increase in profits
from food and beverages.").

[9] *See Joe Hand Promotions, Inc. v. Carranza*, 2009 U.S. Dist.
LEXIS 109590, at *7 (E.D. Cal. Nov. 23, 2009).

fees to an aggrieved party who prevails"); (4) a permanent injunction under 47 U.S.C. § 605(e)(3)(B)(i)(court may grant a final injunction "on such terms as it may deem reasonable to prevent or restrain violations" of the Act), enjoining Defendants from ever intercepting or exhibiting an unauthorized program in violation of the Communications Act; and (5) costs and post-judgment interest at the highest lawful rate.

### Defendants' Response and Motion to Strike (#25)

After Plaintiff filed its first motion for summary judgment (#14) and Defendants demonstrated that Plaintiff had not produced requested discovery, the Court vacated the original scheduling order and entered a new one (#20, 21), to give the parties the opportunity to obtain the undisclosed discovery and cure the problem.

Defendants note that to determine whether such a violation was harmless, the court considers "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence, (3) the possibility of curing such prejudice by granting a continuance, and (4) the explanation for the party's failure to disclose." *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003). They conclude that the importance of the evidence is obvious since it was all the evidence Plaintiff needed to support its claims, that Plaintiff's failure to disclose was highly prejudicial to Defendants, that the reopening of

-17-

discovery and postponement of the trial setting substantially mitigated the prejudice, and that Plaintiff offered no explanation for its failure to disclose. Thus three out of four factors work against admission of the evidence and testimony. Defendants urge that because Plaintiff's claims are based "on a theory of strict and punitive construction, they should perish by that same sword." #25 at p.7.

Moreover, in response to Plaintiff's current amended motion for summary judgment, Defendants emphasize that the Scheduling Order entered on December 31, 2012 (#21) did not create an extended deadline for expert designations, but instead stated that these periods had "expired." Moreover Plaintiff filed the amended motion without permission for late designation of expert witnesses, without leave of court to make its required initial disclosures in an untimely manner, and without dispensations from the automatic sanction of Fed. R. Civ. P. 37(c)(1) barring use of the information and testimony of witnesses that were not timely disclosed.

Furthermore, Defendants conclusorily assert that four questions of fact preclude summary judgment here: (1) whether Defendants intercepted the telecast in dispute on September 19, 2009;[10] (2) whether the alleged unauthorized exhibition of the Event was willful and for the purposes of direct or indirect commercial

---

[10] The Court disagrees. Plaintiff has presented substantial evidence that the Event was illegally broadcast at the Bronx Grill on September 19, 2009. Defendants have conceded that it was.

advantage or private financial gain; (3) whether $60,000.00 is an appropriate amount of statutory damages for Defendants allegedly willful violation of the Communications Act; and (4) whether Plaintiff's request for attorneys' fees and costs is reasonable.

Defendants object to Riley's affidavit as comprised almost completely of legal conclusions and hearsay, and not based on personal knowledge. Defendants also claim that Riley's testimony regarding license agreements, rate cards, methods of obtaining the signal, and damages, constituted expert evidence that was not disclosed until November 2, 2012, well beyond the deadline of March 2, 2012 on the Scheduling Order (#13).

In addition, Defendants challenge the affidavit of counsel, David M. Diaz, as an expert witness on attorneys' fees because he, too, was not timely disclosed as an expert witness.

Regarding the substance of the motion for summary judgment, Defendants attach affidavits from Shahab Hashemi and Michael Taubin (Exs. 2 and 3) to demonstrate that if the Event was shown at the Bronx Grill, they were unaware of it and did not authorize it, and thus did not do so for indirect or direct commercial advantage or gain for a willful violation.

### Plaintiff's Reply (#27)

Plaintiff contends that this Court rendered Plaintiff's error moot when it vacated the original docket control order, including the expert deadline, and gave the parties additional time for

discovery, granted either party leave to file a new motion for summary judgment (#20), and set the trial three months later. Defendants, themselves, in their response concede that the continuance and reopening of discovery "substantially mitigated" any prejudice to them.  In *Texas A&M*, 338 F.3d 394, applying its four factors, the Fifth Circuit found that even though the plaintiffs failed to explain their failure to timely disclose experts pursuant to Rule 26, the prejudice to the opposing parties was "negligible," in part because the district court gave the parties an adequate amount of time (one month) to examine and respond to the contested evidence and admitted the summary judgment evidence on a finding of harmless error.  *Id.* at 402.

This Court agrees that the same result should be reached here. Although the Court did not find Plaintiff's earlier failure to provide timely discovery to Defendants justified, because the Court gave Defendants substantial time to conduct further discovery and prepare for trial after granting their first motion to strike (#16, 20, 21), the Court finds minimal if any prejudice to Defendants at this point from that earlier delay.

Regarding Defendants' challenge of untimely designation of experts, Plaintiff points out that on November 2, 2012 it served Defendants (1) Plaintiff's Rule 26(a)(1) and 26(a)(2)(A) disclosures, along with documents that were bates-labeled JHP-001 through JHP-0080, (2) Plaintiff's Response to Defendants' Request

for Production, and (3) Plaintiff's Responses to Defendants'
Interrogatories, all of which Defendants received on November 6,
2012. Ex. A. Therefore Defendants have known about Plaintiff's
designation of Riley and Diaz[11] as experts and have had possession
of Riley's affidavit since November 6, 2012, more than 90 days
before the initial trial setting and more than 180 days before the
current trial setting. There is no unfair surprise or prejudice to
Defendants in admitting this testimony.

Furthermore, Riley's affidavit is admissible because he states
that he is the custodian of records for Plaintiff and that auditor
Hugo Flores' affidavit, the Licensing Agreement, and the Rate card
are records kept in the regular course of business and admissible
under Rule 803. #23-1, Ex. A ¶18. Other courts, including this
one,[12] have determined that Riley's affidavit and similar ones which
has been used to establish the substantial impact cable piracy has
had on Plaintiff's business provide competent evidence in
determining liability[13] and sufficient evidence in establishing the
substantial impact cable piracy has on Plaintiff's business. The

---

[11] Plaintiff further points out that under Rule 54(b) the court
can determine fees on a motion filed after entry of judgment, while
defense counsel usually expect that opposing counsel will seek to
prove his fees as an expert on the subject, so any prejudice can be
cured.

[12] *J&J Sports Productions, Inc. v. Orellana,*, 2012 WL 3155728,
at *5.

[13] *See, e.g., J&J Sports Prods. v. Q Café, Inc.*, No. 3:10-CV-
2006-L. 2012 WL 215282, at *3 (N.D. Tex. Jan. 25, 2012).

Licensing Agreement, as a contract, is independently admissible because contracts are not hearsay. *Kepner-Tregoe, Inc. v. Leadership Software*, 12 F.3d 527, 540 (5th Cir. 1994). Also an auditor's affidavit is admissible as a sworn statement of a person providing personal observations of what he or she witnessed, regardless of whether it is a business record. *J&J Productions, Inc. v. Q&Q Corp.*, Civ. A. No. H-10-3677, 2011 WL 4457089, at *1 (S.D. Tex. Sept. 20, 2011).

Moreover, Plaintiff points out that Defendants have failed to demonstrate a genuine issue of material fact because the affidavits of Hashemi and Taubin are composed of conclusory and unsubstantiated allegations. Defendants have admitted that the Event was broadcast in their Establishment on September 19, 2009. #4 at ¶¶ 16 and 18. Their vague, conclusory statements that they were not aware of it and did not authorize it cannot controvert the direct, eye-witness testimony of Hugo Flores, accompanied by a copy of the video he took #23, Ex. A-2; Ex. C. *See Bayou West Condominiums Homeowners Ass'n v. Royal Surplus Lines Ins. Co.*, 415 F. Supp. 684, 686 (S.D. Tex. 2006)(affidavit in opposition to summary judgment must do more than show there is some metaphysical doubt as to the material facts and offer more than a scintilla of evidence; the affiant must designate specific facts that show a genuine issue of material fact for trial, such that a reasonable jury could return a verdict in defendant's favor), *citing*

-22-

*Matsushita Electrical*, 475 U.S. 575, and *Anderson*, 477 U.S. at 249. At the same time, Plaintiff points out that because Hashemi and Taubin expressly state in their affidavits hired managers who oversaw the day-to-day operations of the Establishment and that they, themselves, did not directly manage the day-to-day operations, they cannot testify as to the purpose behind the broadcasting of the Event by the managerial staff in their Establishment, i.e., whether it was for commercial advantage or private gain. For the same reasons their conclusory claims that they acted "in good faith, non-willfully, and with reasonable grounds to believe they were in compliance" are insufficient.

Even if Defendants were unaware of the Event being broadcast at their Establishment, personally had no intent to broadcast it, and realized no financial gain from it, Defendants are still vicariously liable for this willful violation of the statute. Any unauthorized showing of the Event is a violation of the Communications Act, a strict liability statue. Plaintiff only has to show that broadcast was shown in Defendants' Establishment without its authorization. *Orellana*, 2012 WL 3155728, at *5. To prove vicarious liability in a federal anti-piracy case, Plaintiff need only show that the Defendants "'(a) had a right and ability to supervise the infringing activities, and (b) an obvious and direct financial interest in the exploitation.'" *Q Café*, *Inc.*, No. 3:10-CV-2006-L, 2012 WL 215282, at *4, *quoting Softel, Inc. v. Dragon*

-23-

*Med. & Sci. Commc'ns*, 118 F.3d 955, 971 (2d Cir. 1997).  Plaintiff also points out that intent or knowledge of infringement is not an element of a claim for vicarious liability, and therefore innocence is not a defense.  *Playboy Enterprises, Inc. v. Webbworld. Inc.*, 991 F. Supp. 543, 553–54 (N.D. Tex. 1997).  Plaintiff has shown that most of the Defendants had that right and ability to supervise. #23, ¶¶ 9.  As noted, Defendants 152 Bronx, LP and 152 Bronx GP, LLC have admitted they do not have a valid defense against any of the claims asserted by Plaintiff in this lawsuit.  Ex. D and Response No. 72; Ex. E, Response No. 72.  Both had the right and ability to supervise the activities of the Establishment and 152 Bronx LP held the liquor license.  Hashemi and Taubin were managers and limited partners of 152 Bronx, LP and 152 Bronx GP, LLC and also had a financial interest in the activities of the Establishment.

Nevertheless, Plaintiff does concede that it does not yet have proof that Owidi and Dobson had the right and the ability to supervise the activities of the Establishment, although it has shown that they had a direct financial interest in them.   It explains that Owidi and Dobson are not limited partners, but members of the limited liability company (Ex. E), and members of a limited liability company can be managed by its members.  *See Selecting a Business Structure*, SOS, http://www.sos.state.tx.us/corp/businesstruture.shtml (last visited

May 10, 2012.  Plaintiff has not provided the records of the Texas Comptroller and Texas Secretary of State establishing that Owidi and Dobson were members of 152 Bronx GP, LLC; therefore judgment should not be granted against them at this time.

Moreover because there was no way the Defendants could have "innocently" accessed the broadcast, it is obvious they specifically and willfully acted to illegally intercept the transmission of the Event for their commercial advantage.  It is also obvious they acted for private financial gain and direct commercial advantage by misappropriating Plaintiff's licensed exhibitions and infringing on Plaintiff's rights while evading proper payment to Plaintiff.  It is not relevant whether they actually obtained a profit; the statute requires only that they have the intent or purpose of financial gain.

### Court's Decision

The Court fully concurs with Plaintiff's arguments that the motion to strike lacks merit and accordingly finds it should be denied.

The Court also finds for the many reasons cited by Plaintiff, Defendants have failed to meet their burden of proof to raise a genuine issue of material fact, whereas Plaintiff has more than met its burden as to Defendants 152 Bronx, LP, 152 Bronx GP, LLC, Hashemi, and Taubin.

Accordingly, the Court

-25-

ORDERS that for the reasons shown Defendants' motion to strike is DENIED.  The Court further

ORDERS that Plaintiff's motion for summary judgment is interlocutorily GRANTED as to Defendants 152 Bronx, LP, 152 Bronx GP, LLC, Hashemi, and Taubin, but DENIED as to individual Defendants Owidi and Dobson.  Plaintiff is granted leave until May 31, 2014 to determine whether it can locate proof that Owidi and Dobson had a right and ability to supervise the activities of the Establishment or to inform the Court that it cannot do so.

Moreover, regarding Mr. Diaz's request for a mandatory award of attorney's fees, the Court finds that he is entitled to such an award.  Given Mr. Diaz's regular representation of plaintiffs in similar Communication Act cases, a number before this Court, however, the Court finds his prayer for a contingent fee would result in too great a windfall for the work provided solely for this case, and that the lodestar method of calculation is more appropriate.  The Court also will not award speculative fees for post-trial or appellate services at this time.  Nevertheless the Court defers ruling on amount of the fee award until after this whole case is resolved as there may be additional hours warranting compensation.  The Court  also defers issuing injunctive relief until that time so that it applies to proper Defendants.

**SIGNED** at Houston, Texas, this  26ᵗʰ  day of  March , 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE